UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| RONNIE TIPPETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 6:12-cv-239-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits. [D.E. 13, D.E. 11].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion [D.E. 13] and grant Defendant's motion [D.E. 11].

**I.   OVERVIEW OF THE PROCESS AND THE INSTANT MATTER**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

>   2.  An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
>   3.  If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
>   4.  If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
>   5.  If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ considered Plaintiff's claim in accordance with the five-step sequential evaluation process. [Tr. 10–17]. He first determined that

2

Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 12]. Under step two, the ALJ found that Plaintiff has three medically determinable severe impairments, including a history of alcohol abuse, degenerative disc disease, and glaucoma. [Tr. 12].

After deciding that Plaintiff's impairments do not equal a listed impairment under step three, the ALJ proceeded to step four and found that Plaintiff has a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b). [Tr. 13]. Although the ALJ found that Plaintiff cannot perform his past relevant work with this RFC, he determined with the assistance of a vocational expert that other work exists in significant numbers nationally and across the state that Plaintiff can perform in his condition. [Tr. 16]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 17].

In this appeal, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence of record. Specifically, Plaintiff argues that the ALJ erred by 1) discounting the medical opinion of Dr. David Muffly [D.E. 13 at 11]; 2) determining that Plaintiff does not possess the criteria to meet listing 12.04 and

3

12.06 [D.E. 13 at 13-15]; 3) concluding that there are no jobs available in the national economy that Plaintiff can perform consistently with Dr. Muffly's report [D.E. 13 at 16]; and 4) not including Plaintiff's psychological restrictions in his hypothetical question to the vocational expert [D.E. 13 at 17].  The Court has considered arguments by Plaintiff and the Commissioner, as well as the administrative record, and, for the reasons stated below, affirms the Commissioner's decision.

## II.  STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, see *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently thirty-seven years old with an eleventh grade education. [Tr. 15; 53]. He has past work experience as a forklift operator in 1995 and 1996, but claims to have not engaged in any work since that time. [Tr. 43]. Plaintiff filed for disability under Title II for the first time on September 27, 2007, alleging disability beginning on January 6, 2006. The claim was denied initially on January 24, 2008, and upon reconsideration on May 6, 2008. Plaintiff appeared and testified at a hearing with an ALJ on April 17, 2009, and the ALJ issued an unfavorable decision on September 14, 2009. [Tr. 61]. Plaintiff then filed the application at issue in this case on October 22, 2009, which was also denied both initially and on reconsideration. He appeared for a second hearing before a new ALJ on May 5, 2011. The ALJ issued an unfavorable decision on July 6, 2011, a decision which he now appeals. [Tr. 17].

According to Plaintiff, his medical problems began when he was injured in a car accident in 1996. [Tr. 27]. After the car accident, Plaintiff claims that he has experienced frequent seizures, which sometimes happen

5

multiple times a month; however, Plaintiff did not seek treatment for these seizures until 2008 at the earliest. [Tr. 27; Tr. 283]. Plaintiff also has a history of alcoholism, and has received treatment for back pain that stems from degenerative disc disease. [Tr. 247; 273]. Most recently, Plaintiff underwent a consultative eye examination in October 2010 with Dr. Syamala Reddy, who determined that he has glaucoma in both eyes. [Tr. 412]. However, Dr. Reddy specifically noted that the glaucoma should not limit Plaintiff in his ability to carry out basic work activities at this time. [Tr. 412].

Generally, Plaintiff's medical treatment over the past twenty years has been sporadic at best. Records reflect that he only visited a physician five times between January 1994 and March 1999. [Tr. 54]. Plaintiff was admitted to the hospital in 2005 because of a Methodone overdose and alcohol intoxication. [Tr. 54]. Further, he was admitted in 2007 with complaints of rectal bleeding, and discharge diagnoses included lower gastrointestinal bleeding, alcohol abuse, anemia, chronic bronchitis, and a history of smoking. [Tr. 54].

Starting in 2008, however, Plaintiff began seeking mental health treatment at Comprehensive Care ("Comp Care"), complaining of seizures, grief from his cousin's

6

death, and alcohol withdrawals. [Tr. 55; Tr. 309]. The physicians at Comp Care, while diagnosing him with Substance-Induced Mood Disorder, Alcohol Dependency, and Post-Traumatic Stress Disorder, consistently noted that he possessed a logical, sequential, and goal-oriented thought process, fair judgment, understood the consequences of his behavior, and was alert and oriented to his surroundings. [Tr. 304]. Plaintiff received a psychological evaluation from Dr. Barbara Bellew at his attorney's request in September 2008, who determined that Plaintiff suffers from marked limitations in his ability to maintain social functioning, moderate to marked limitation in his ability to perform activities of daily living, and mild to moderate limitations in his ability to sustain concentration, persistence and pace. [Tr. 247]. Finally, Plaintiff received a consultative examination from Dr. Phil Pack in July 2010, and received abnormally low scores on the Wechsler Adult Intelligence Scale and the Wide Range Achievement Test. [Tr. 352]. However, Dr. Pack also administered the Rey 15-Item test, a measure to test for overt malingering, and Plaintiff received a score of 6, which, according to Dr. Pack, "indicates a less than valid effort" and led Dr. Pack to suspect the "validity of his testing." [Tr. 352—53].

7

With regards to Plaintiff's physical complaints, he received a consultative physical examination in 2007 from Dr. Barry Burchett, who found that he had normal gait, negative straight leg raising, and a normal lumbar range of motion. [Tr. 54]. Plaintiff's attorney also paid for him to receive an independent evaluation from Dr. David Muffly in October 2008. [Tr. 56; 252]. Dr. Muffly diagnosed Plaintiff with chronic thoracic pain, a history of alcohol dependency, and a seizure disorder. [Tr. 56; 254]. He opined that he could lift no more than fifteen pounds, would have to change position every thirty minutes, and could sit, stand and walk for only three hours combined, among other findings. [Tr. 56; 254].

Notably, Plaintiff is still able to care for his personal needs, prepare simple meals, shop three to four times a week, manage his finances, and maintain ongoing relationships with his parents and girlfriend. [Tr. 57]. Further, so far as the Court can tell, the only difference in Plaintiff's condition between this current appeal [Tr. 10—17] and the first time his case was reviewed and denied by an ALJ [Tr. 51—61], is Plaintiff's development of glaucoma, an MRI revealing signs of early development of degenerative disc disease, and right wrist pain. [Tr. 377, 381, 412]. Otherwise, Plaintiff points almost entirely to

8

medical evidence that was compiled before his first hearing in 2009 and that was considered by the first ALJ who reviewed and denied his case. [Tr. 51–61].

## IV. Analysis

Plaintiff's first argument is that the ALJ erred by not giving Dr. Muffly's opinion controlling weight. The Court finds that this first contention is unwarranted.

Under the "treating physician" rule, an ALJ is required to give controlling weight to a treating physician's opinion when deciding whether an individual is disabled, unless it is ill-supported by medical evidence or the case record. 20 C.F.R. § 404.1527(d)(2). Generally, if the ALJ chooses to disregard the treating physician's opinion, then he must give specific reasons for doing so. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996) (a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion . . ..").

Notably, however, "the SSA requires ALJs to give reasons for only *treating* sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for

9

[the] medical condition.'" *Id.* (quoting 20 C.F.R. § 404.1502). This regulation contemplates an "ongoing treatment relationship" that does not generally encompass a consultative physician who sees a patient only once. *Id.* (holding that a physician was not a treating source when he only saw the patient one time).

Plaintiff argues that the ALJ should have adopted the opinion of Dr. Muffly, and, because Dr. Muffly's opinion was so restrictive, contends that adopting his opinion would have required an award of disability benefits. [Tr. 252]. However, because Dr. Muffly was a one-time examining physician, who was notably compensated by Plaintiff's attorney for his opinion, Dr. Muffly was not a "treating physician" within the legal framework, and the ALJ was not required to give *any* reasons for not accepting his opinion. *Smith*, 482 F.3d at 876.

Regardless, the objective medical evidence in the record supports the ALJ's decision to discount Dr. Muffly's medical opinion. Dr. Muffly's clinical findings were relatively mild, as he reported that although Plaintiff had mild stiffness in his back, he had good balance, could fully squat and rise, had no abnormalities in his left upper extremities, ankles, knees or hips, had full range of motion in his ankles, knees, and hips, and had negative

10

straight leg raising. [Tr. 252–54]. Although Dr. Muffly diagnosed Plaintiff with chronic thoracic pain, he did not detect any evidence of neurological compromise such as motor strength, reflex, or sensory deficits related to the claimant's history of thoracic compression fractures. [Tr. 252–54; 59]. However, despite these mild clinical findings, Dr. Muffly's restrictions were extreme, as they limited Plaintiff to a maximum lifting of fifteen pounds, required him to change positions every thirty minutes, and allowed him no more than three hours of sitting, standing, and/or walking in an eight hour period, thus rendering him bedridden for the remainder of the day. [Tr. 254]. Quite frankly, he did not conduct the testing or see Plaintiff with enough frequency to assign restrictions of this severity.

Moreover, although Dr. Muffly also diagnosed Plaintiff with a seizure disorder and used that assessment in assigning Plaintiff's work restrictions, there is no medical evidence presented that Dr. Muffly did anything to confirm these seizures; rather, he simply accepted Plaintiff's word that he experienced seizures twice a month for eight years, but never sought medical treatment. [Tr. 252–54]. Thus, the ALJ acted within his discretion when he

11

concluded that Dr. Muffly's opinion is contradicted by the remainder of the record.

Plaintiff next argues that the ALJ erred in his determination that Plaintiff does not have impairments that meet or medically equal listing 12.04, or "Affective Disorders", and 12.06, or "Anxiety-Related Disorders." [D.E. 13 at 13-15]. With regard to the 12.04 listing, Plaintiff argues that, according to Dr. Bellew's 2008 report from the Psychology Center for the Cumberlands, he possesses the requisite four out of six characteristics to meet the listing. [Tr. 247].[1] Similarly, Plaintiff argues that he has produced medically documented evidence that he meets the 12.06 listing through his treatment at Comp Care and with Dr. Bellew. [D.E. 13 at 14].[2] Therefore, he claims that the ALJ erred by concluding that he does not meet listings 12.04 or 12.06.

---

[1] Listing 12.04 requires the claimant to have depressive syndrome characterized by at least four of the following: pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusions or paranoid thinking.
[2] Listing 12.06 requires the claimant to have anxiety as evidenced by generalized persistent anxiety; persistent irrational fears of objects, activities, or situations; recurrent severe panic attacks; recurrent obsessions or compulsions; or recurrent and intrusive recollections of a traumatic experience which are a source of marked distress.

12

What Plaintiff fails to recognize, however, is that the ALJ in this appeal, and the ALJ in his previous hearing whose analysis the current ALJ largely deferred to [Tr. 56–58],[3] considered the medical records to which Plaintiff draws the Court's attention, and determined them to be incredible given their excessive reliance on Plaintiff's subjective testimony and their contradictory nature with Plaintiff's own testimony. For example, the ALJ pointed out that Dr. Bellew's finding that Plaintiff suffers from moderate to marked restrictions with regard to daily activities was contradicted by Plaintiff's reports that he is able to care for his personal needs, prepare simple meals, shop three to four times a week, and manage his finances. [Tr. 57]. Further, the ALJ noted that Plaintiff associates his inability to do most activities with his physical pain, and not with his psychological symptoms. [Tr. 57]. The ALJ also pointed out that Dr. Bellew's

---

[3] The Plaintiff does not contest, nor acknowledge, the ALJ's heavy reliance on the conclusions of the report of the first ALJ to review Plaintiff's case. [Tr. 51–61]. However, under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), "[a]bsent evidence of improvement" or, conversely, deterioration, "in a claimant's condition, a subsequent ALJ is bound by the findings of the previous ALJ." *Id.* at 842. Thus, to the extent that Plaintiff's condition remained the same and to the extent that Plaintiff was relying in this appeal on the same medical evidence as the previous appeal, the Plaintiff is "bound by the principles of res judicata." *Id.* at 841.

conclusion that Plaintiff is markedly limited in his ability to maintain social functioning was contradicted by Plaintiff's testimony that he was able to maintain a relationship with a long-term girlfriend, and often visit with his parents and neighbor. [Tr. 57].

As the ALJ also pointed out, the medical notes and diagnoses from Comp Care do not change this analysis, as the notes are largely comprised of Plaintiff's unsubstantiated subjective complaints of anxiety and inability to handle grief. [Tr. 285]. Indeed, in the mental status screening, the psychiatrist noted that he was neat and appropriate in appearance, interacted in a friendly and cooperative manner, was alert and attentive, had a recent and intact memory, and was clear, coherent, and relevant in his speech and thought. [Tr. 285]. While the psychiatrist noted that Plaintiff's mood was anxious and that he appeared fidgety, he also noted, like other physicians in the record, that he found plaintiff's reliability to be questionable. [Tr. 285]. Thus, contrary to Plaintiff's argument, the Comp Care notes do not support a conclusion that Plaintiff is markedly limited in his ability to carry out daily activities or maintain social functioning, and the ALJ appropriately concluded that he does not meet the criteria for listings 12.04 and 12.06.

The ALJ's decision to discredit the above medical evidence is also supported by Sixth Circuit case law, which has long maintained that ALJ's are free to disregard conclusory statements by physicians if the opinions are inconsistent with the case record. *See, e.g.*, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391–92 (6th Cir. 2004) (finding that the ALJ properly rejected portions of a physician's opinion because it was inconsistent with other evidence in the record); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x. 369, 372–73 (6th Cir. 2006) (finding no error in the ALJ's failure to defer to the physician's opinion because it was contradicted by other physicians and the information in the claimant's medical records).

Next, Plaintiff argues that the ALJ erred by concluding that there are jobs available in the national economy that Plaintiff can perform with his impairments. [D.E. 13 at 16]. Specifically, Plaintiff points out that because the "restrictions set out in Dr. Muffly's report . . . require [Plaintiff] to be able to lie down to obtain relief and to change positions every 30 minutes," there cannot be a job in the national economy available consistent with these restrictions. [D.E. 13 at 16]. However, as discussed above, the ALJ appropriately discredited Dr. Muffly's opinion because it was not

15

supported by objective medical evidence. [*See supra* pp. 9–11]. It naturally follows that the ALJ would not, and indeed should not, consider Dr. Muffly's opinion when determining, with the aid of a vocational expert, whether there is available work in the national economy for Plaintiff. *See Foster v. Halter*, 279 F.3d 348, 356–57 (6th Cir. 2001) (noting that an ALJ is not required to incorporate a limitation into his hypothetical to the vocational expert if the ALJ determines that the limitation is unsupported by medical evidence in the record.).

Finally, Plaintiff argues that the ALJ ignored Plaintiff's psychological impairments when forming his question to the vocational expert. (Tr. 11, 45–47). Plaintiff again ignores that the ALJ, partly in reliance on the first ALJ's conclusions, disregarded Dr. Bellew's conclusion that Plaintiff suffers from moderate to marked limitations in his ability to perform daily activities and marked limitations in social functioning. [Tr. 57; Tr. 247; *see supra*, pp. 12–14]. Instead, like the first ALJ, he included only those psychological limitations that were supported by the medical evidence in the record: namely, that Plaintiff can "perform no more than simple instructions in an object-focused work setting" and "must avoid high stress work environments as well as production-

16

rate or quota-type jobs." [Tr. 13; Tr. 58]. Thus, substantial evidence supported the ALJ's decision to modify the hypothetical question to the vocational expert to reflect Plaintiff's actual impairments as he believed them to be based off of the objective medical evidence. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (holding that an ALJ can rely on the testimony of the vocational expert in response to a hypothetical question if the "question accurately portrays Plaintiff's individual physical and mental impairments.") (internal citations and alterations omitted).

Although Plaintiff does not necessarily present the following as an argument, the Court feels that it is necessary to address his statement in his brief that he was without health insurance, and, thus, without the financial resources to visit doctors regularly. Despite Plaintiff's financial situation, the ALJ was still entitled to consider his inconsistent medical treatment while making a negative credibility finding because the ALJ's finding was based on a variety of factors. *See Davis v. Astrue*, No. 08-122-GFVT, 2009 WL 2901216, at *1 (E.D. Ky. Sept. 3, 2009) (the "ALJ's failure to consider Davis's ability to afford medical treatment was a harmless error because the ALJ based Davis's credibility on various factors, not just on

17

Davis's lack of frequent medical treatment."). Thus, even though this was not an issue specifically raised by the Plaintiff, the ALJ committed no error in this regard.

In conclusion, the objective evidence in this case did not establish that Plaintiff is disabled within the meaning of the Social Security Act, and substantial evidence supports the ALJ's decision.

This the 24th day of June, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge